UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LOUIS J. BRADFORD                    CIVIL ACTION NO. 06-1147

versus                               **REFERRED TO:**

CELLXION LLC                         **MAGISTRATE JUDGE HORNSBY**


**MEMORANDUM RULING**

**Introduction**

 Louis Bradford ("Plaintiff") was employed by Cellxion, LLC when he suffered a heart attack that required a brief hospitalization and several weeks of recovery time.  Plaintiff returned to work after leave available under the Family and Medical Leave Act ("FMLA") expired, but he was still subject to some work limitations imposed by his physician.  Cellxion did not have work available that Plaintiff could perform under the restrictions.  Plaintiff was eventually terminated.  He filed this action, without representation by an attorney, based on a claim of discrimination under the Americans With Disabilities Act ("ADA").  Cellxion filed a counter-claim for collection of a loan that it made Plaintiff.  Both parties filed written consent to have a magistrate judge decide the case. Doc. 17. The district judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(c). Doc. 19.

 Before the court are competing motions for summary judgment (Docs. 39 and 46) filed by the parties.  For the reasons that follow, Plaintiff's motion will be denied, and

Cellxion's motion will be granted, and judgment will be entered dismissing Plaintiff's claims and ordering that he pay Cellxion the balance of the loan.

**Summary Judgment Standard**

Under Fed.R.Civ.P. 56(c), a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

When cross-motions are before the court, each motion must be considered separately. Each movant bears the burden of establishing that no genuine issue of material fact exists and

that it is entitled to judgment as a matter of law.  <u>Shaw Constructors v. ICF Kaiser Engineers, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004).

**Relevant Background Facts**

The summary judgment materials submitted by the parties include depositions, affidavits, discovery responses and work-related documents.  A review of those materials shows that there is no genuine dispute as to the following facts.

Cellxion builds and installs towers and storage buildings, known as sheds, for wireless service providers.  Cellxion hired Plaintiff in May 2003 as a carpentry employee.  Plaintiff's job included cleaning and buffing the floors of the sheds, which required Plaintiff to move the buffer, boxes and other items found in the sheds.  Many of those items weighed more than ten pounds.

In June 2004, Plaintiff experienced what the medical records appear to suggest was back strain.  Physicians limited Plaintiff to light work with no twisting for a total period of about a month.  A Cellxion official testifies that Cellxion does not always have light-duty work available, but it does provide light-duty work to employees who need it if it is then available.  Light-duty work was available in June 2004, and it was provided to Plaintiff.

Plaintiff had a heart attack on September 16, 2004.  He was hospitalized for three days and had a stent inserted.  Plaintiff began approved FMLA leave on the day after he was hospitalized.  A physician issued a note dated September 28, 2004 that Plaintiff "is to have light lifting duties [less than 10 lbs.] and is cleared for light work beginning October 15,

2004." Plaintiff presented that note to the safety officer at work, but the officer told Plaintiff that he did not have any work available that fit those requirements.

Plaintiff completed an application for short-term disability benefits on October 8, 2004. The attending physician's statement attached to the application stated that Plaintiff had a "slight limitation of functional capacity, capable of light work." Lifting of more than ten pounds was excluded. The physician stated that Plaintiff should be able to return to work full-time on October 15, 2004 and return to "full work capacity" in six to nine weeks after his admission date.

Plaintiff was hospitalized again on October 27, 2004 and spent three days in the hospital. A second stent was installed. The hospital staff completed a form that stated Plaintiff could return to work on December 3, 2004, subject to the following: "After that date, patient may return to work doing limited work with no physical exertion secondary to heart condition."

On November 4, 2004, the day after Plaintiff received the hospital release form, he went to Cellxion to talk about his short-term disability application. Plaintiff did eventually receive one payment of $840 for about one month's benefits. Plaintiff was short on funds at the time, and he signed a promissory note to repay $1,350 that the borrowed from Cellxion. Repayment was to be made through payroll deductions, with the balance in full due upon termination of employment.

On December 4, 2004 Plaintiff faxed to Cellxion a form dated December 2, 2004, regarding Plaintiff's ability to work.  The physician who completed the form checked a box to indicate that Plaintiff could "return to work on _____ with limitations as indicated." The physician checked a box to indicate that Plaintiff could perform medium work (lifting 50 lbs. maximum with frequent lifting or carrying of up to 25 lbs.), and he checked boxes regarding Plaintiff's ability to stand, drive, bend, etc.  He did not, however, fill in the blank for the date on which Plaintiff could return to work with those limitations.

Plaintiff reported to work on December 6, 2004 and checked in with his supervisor. Plaintiff performed some light work until employees showed up in the Human Resources Department, and then Plaintiff reported to that department.  A company official told Plaintiff that the medical form he had faxed was not complete. Plaintiff went home after being at work for only five hours.

Plaintiff returned to work on December 8th or 9th with a note from a different doctor. The note stated that Plaintiff "can return back to work after his appointment to see me in Feb. 05."  That did not allow Plaintiff to return to work, and a Cellxion official told Plaintiff that he had already exhausted all 12 weeks of leave available to him under the FMLA.  Plaintiff responded that he still needed to see his doctor, noting the most recent physician's letter. Plaintiff admits that Cellxion officials then offered him an additional 30 days of leave to try to get in earlier to see the physician and attempt to get a work release, but Plaintiff did not accept that offer.  He says that he declined the offer because he could not do the job.

Cellxion sent Plaintiff a letter on December 9, 2004 that stated his employment was terminated.  The letter added that Plaintiff would be eligible for rehire if a position was available, contingent upon a physician's release to full duty.

**ADA Requirements**

Plaintiff filed a charge of discrimination with the EEOC.  Disability was the only basis of discrimination listed in the charge.  The agency issued a Notice of Right to Sue after it was unable to conclude that the information obtained established a violation.  Plaintiff then filed this civil action.  He later attempted to amend his pleadings to add a claim of race discrimination under Title VII and a claim for violation of the FMLA.  The court denied leave to add those claims because race was not identified as a grounds of discrimination in the administrative charge, and the portion of the proposed pleading regarding an FMLA claim did not state any facts to explain the basis for such a claim.  See Doc. 26.  Accordingly, the focus here is on Plaintiff's ADA claim.

The ADA requires covered employers to provide reasonable accommodations to known physical or mental limitations of an otherwise qualified individual "with a disability" who is an employee, unless the employer can demonstrate that the accommodation would impose an undue hardship.  42 U.S.C. § 12112(b)(5)(A).  Thus, a "threshold requirement" in an ADA claim is that the Plaintiff establish that he has a disability.  Waldrip v. General Electric Co., 325 F.3d 652, 654 (5th Cir. 2003).

The ADA defines disability as a physical impairment that substantially limits one or more major life activities of the claimant.  42 U.S.C. § 12102(2)(A).  The terms in the definition must be interpreted strictly, and each case requires a "rigorous and carefully individualized inquiry" into the claimed disability.  Waldrip, 325 F.3d at 654.

Cellxion does not dispute that Plaintiff suffers from an impairment, and courts have recognized that heart disease is an impairment cognizable under the ADA.  See Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000).  But "[m]erely having an impairment does not make one disabled for purposes of the ADA."  Toyota Motor Mfg., Ky, Inc. v. Williams, 122 S.Ct. 681, 690 (2002).  The claimant must also demonstrate that the impairment substantially limits a major life activity.  Id.

Major life activities are those activities that are of central importance to daily life.  Common examples are walking, seeing and hearing.  Toyota, 122 S.Ct. at 690-91.  Such an activity must be substantially limited by the impairment so that the claimant is restricted "from doing activities that are of central importance to most people's daily lives."  Id. at 691.  "The impairment's impact must also be permanent or long term."

Cellxion asked Plaintiff in a Request for Admission to admit that he did not have an impairment that substantially limits a major life activity.  Plaintiff responded, without elaboration: "Plaintiff do have an impairment that substantially (limits) a major life activity."  Plaintiff was also asked to admit that he was able to perform manual tasks and other activities

that are of central importance to most people's daily lives.  Plaintiff responded: "Plaintiff can perform manual tasks like most people can."

Plaintiff testified in his deposition that he is now working at Trucker's Paradise as a busboy.  He works from 6:00 a.m. to 1:00 p.m.  His duties include cleaning tables and washing dishes.  He is required to be on his feet during his shift. Plaintiff testified that he is also a minister at House of Prayer in Minden, where he has served for 25 years.  Plaintiff stated that when he is not working he cleans the house, including washing dishes, vacuuming, mopping and similar chores.  Plaintiff has a driver's license with no restrictions.  He goes fishing once or twice a week with his brother and nephew, who have a bass boat.  Plaintiff holds the rope to help put the boat in the water, and he drives the boat.  In hunting season, Plaintiff goes deer hunting once or twice a week, where he hunts from a box stand that is about three or four feet off the ground.  He shoots a .270 rifle.

Plaintiff testified that, at the time of his deposition, his only work restriction was to not lift over 50 pounds.  The manager of Trucker's Paradise testified in an affidavit that Plaintiff does not pick up anything in the restaurant that weighs over 50 pounds.

Plaintiff was asked at his deposition if he was "able to perform the activities that are central to your daily life?"  Plaintiff asked, "what are you talking about?"  Counsel responded, "walk, talk, see, drive, eat."  Plaintiff answered yes, and he again answered yes when asked if he was able to fish and hunt.

Plaintiff's memorandum in support of his motion for summary judgment includes an unsworn statement that he was discharged from the hospital with a 2,000-calorie cardiac diet. Plaintiff contends that eating is a major life activity that is limited by the diet.  The unsworn assertion in the memorandum is not competent summary judgment evidence.  <u>Larry v. White</u>, 929 F.2d 206, 211 n.12 (5th Cir. 1991). There is, however, a notation in the medical records that Plaintiff was discharged from the hospital on a 2,000 calorie cardiac diet. But there is no evidence that the diet continued to be ordered for more than the normal recuperative period, that Plaintiff followed the diet, or that the 2,000 calorie diet would be a substantial limitation on the ability to eat. Plaintiff testified at his deposition that he could eat, and he did not suggest any limitations.

Other than eating, it is not clear what major life activity Plaintiff might be claiming is substantially limited.  Eating is a major life activity.  <u>Waldrip</u>, 325 F.3d at 655.  But, like the claimant in <u>Waldrip</u>, Plaintiff must offer evidence that his heart condition substantially limits the major life activity of eating.  That is true of any other major life activities such as working or the like, that Plaintiff might claim.  With regard to this factor "permanency, not frequency, is the touchstone of a substantially limiting impairment."  <u>Burch v. Coca-Cola Co.</u>, 119 F.3d 305, 316 (5th Cir. 1997). <u>See</u> <u>also</u> <u>Toyota</u>, 122 S.Ct. at 691 ("The impairment's impact must also be permanent or long-term.").

There is no evidence in the record that Plaintiff's heart condition limited any major life activity, including eating, for more than the ordinary recuperation time.  A limitation that is

temporary in nature or that imposes only some limitations that might preclude the performance of a prior job do not satisfy the applicable standard.  See Taylor, 214 F.3d at 960-61 (dietary restrictions and limitation to light duty following heart attack were not substantially limiting under ADA); Webber v. Strippit, Inc., 186 F.3rd 907 (8th Cir. 1999) (dietary restrictions and difficulty walking long distances or climbing stairs without fatigue were not substantially limiting); Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220 (11th Cir. 1999) (claimant who had heart attack and missed 38 days of work followed by other multi-day absences did not establish a substantial limitation upon ability to work); Waldrip, 325 F.3d at 656-57 (claimant whose doctor testified he would need to occasionally miss a few days of work did not establish a substantial limit upon ability to eat); and Anderson v. City of Dallas, 116 Fed. Appx. 19 (5th Cir. 2004) (claimant who fell and was on limited physical duty for several months did not establish a permanent or long-term limitation required by the ADA).

Plaintiff, within several weeks or a few months after his heart attack, was able to hunt, fish, do household chores, and work full-time at a restaurant job so long as he did not lift over 50 pounds.  Those facts preclude Plaintiff from being considered "disabled" under the ADA. The mere fact that Plaintiff could no longer perform the demands of his past job did not render him disabled. Plaintiff has not argued a theory of relief under the ADA that does not require he establish that he is disabled, so Cellxion is entitled to summary judgment dismissing Plaintiff's claims.

**The Loan**

Plaintiff signed an agreement to repay $1,350 that Cellxion loaned to him.  Plaintiff testified that he had not paid any of the loan back, but Cellxion concedes that $41.88 was withheld from Plaintiff's final paycheck. The balance due is $1,308.12.

Cellxion has established that Plaintiff made the note and owes the debt.  Plaintiff stated in response to a Request for Admission that he had not repaid the money "because the Defendant did not pay the Plaintiff for six-weeks back pay."  Plaintiff did not use that contention as a claim or defense in this litigation, and he has not otherwise created a genuine issue of material fact with respect to his liability on the note. Cellxion is entitled to summary judgment on the note.  See American Bank v. Saxena, 553 So.2d 836 (La. 1989).  A judgment consistent with this ruling will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 11th day of September, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE